The next case today is Toddle Inn Franchising, LLC v. KPJ Associates, LLC at all. Appeal number 20-1550. Mr. Brewster, whenever you're ready. Thank you, Your Honor. May it please the court, my name is Seth Brewster, and along with Micah Smart and Jack Bjorn, we represent the appellants, KPJ Associates, and the related defendants. Your Honor, I would like to reserve three minutes as rebuttal. Yes. This action arises out of a franchise agreement which expired by its terms on July 19, 2016. On July 27, 2018, over two years after the expiration of the franchise agreement, the KPJ defendants sent a letter and notified Toddle Inn Franchising that they were resigning effective immediately as of a franchise of the Toddle Inn and starting the next Monday that they were creating a new entity called Kennebunk Children's Academy. It should be noted just at this time that as of 2018, the only franchise of Toddle Inn Franchising was the KPJ defendant. There has been only in the history of Toddle Inn Franchising, there's only been one other defendant or one other franchise, and that went out of business before 2010. Mr. Brewster, in your objection to the motion to stay and compel, did you ever once raise the issue of Death Star? Your Honor, thank you. At the hearing on August 1st of 2018, in which the court had a hearing about the motion for preliminary injunction, I did argue to the court that there was no basis for a federal claim under Death Star. And also when... Excuse me, did you... So you specifically raised the issue of jurisdiction? Yeah, with respect to Death Star, the oral argument on August 1st, I argued to the court because the case was filed the previous day. Within four hours of notice, the court held a hearing. I appeared, I had not filed any papers, but I argued at that time that Death Star versus 20th Century Fox Films precluded the reverse passing off claim under the Lanham Act. Also, Your Honor, when I filed my answer on October 2nd, 2018, I also, my sixth affirmative defense said that there was no viable claim under Death Star versus 20th Century Fox Films under the Lanham Act. So is there a specific district court ruling on jurisdiction? No, Your Honor, there is not a specific ruling from the court on jurisdiction. It's simple because what I'm struggling with is there's a difference between whether there's a which is we have an obligation to assess jurisdiction and that the Supreme Court precedent in Death Star means that we don't have jurisdiction. Your Honor, your point is well taken. Under this court's authority in Hatch versus Town of Middleton, this court has said that a federal claim is insubstantial and incapable of conferring jurisdiction only if it's obviously without merit, it is wholly frivolous, or is clearly foreclosed by prior decisions of the Supreme Court. It's our position in this particular case that the Lanham Act claim that was asserted in the complaint here was clearly foreclosed by the Death Star court versus the 20th Century Fox Film Now, as this court well knows, it's a court of limited jurisdiction and that the federal courts jealously guard their own jurisdiction with respect to cases that come before it. It is the obligation even if it's not raised by the parties for the court to ensure that it has jurisdiction over the dispute, particularly if the court is to enter any orders in the particular case. With respect to it also, it's always the issue with respect to jurisdiction can be raised virtually at any time. I will also note for the court that we did specifically also in our opposition to the petition for attorney's fees, it's docket number 60 in the case. This is a document that was filed with the district court on May 22nd, 2020. We did also specifically address the court's subject matter jurisdiction in this case and that it did not have subject matter jurisdiction because of the Supreme Court's holding in Death Star versus 20th Century Fox. With respect to it, the reason that Death Star versus 20th Century Fox is so critical in this case is that the Supreme Court held in 2003 with respect to the Lanham Act is that the Lanham Act does not protect the authors of ideas, concepts, or communications. That was the seminal holding of Death Star versus 20th Century Fox. The reason why that's so important in this particular case is that's exactly what they're seeking to protect in this case with respect to this reverse passing off claim. Meaning, if the court is to look at their complaint, what they are claiming is that the so-called toddle-in system was being used even when our client, the appellants in this case, were clearly unaffiliated with toddle-in and did not impair the goodwill by essentially that the issue here is not who produced a particular product because the concept of reverse passing off under the Lanham Act is that when someone takes someone else's product produced by somebody else and puts their own name on it and sells it into the marketplace, that's what the Lanham Act is seeking to protect. Along those lines, I refer the court to page 37 of the Death Star opinion. In page 37 of the Death Star opinion, the court said, reading the phrase, quote, origin of goods in the Lanham Act in accordance with the Act's and in light of the copyright and patent laws, which were, we conclude that the phrase refers to the producer of the tangible goods that are offered for sale and not to the author of any idea, concept, or communication embodied in those goods. Now, again, is that- Yes. Well, we argued that there was no reverse passing off claims. You're correct, Your Honor. Okay. And so what did the arbitrator find to be the tangible good produced? The arbitrator did not make such a finding. The arbitrator's decision with respect to the Lanham Act is not very specific, and it simply says that there was a Lanham Act claim. Now, I will commend to this court that the federal courts can't derogate or delegate its authority to review jurisdiction and to be the guardians of its court to another party, in particular, an arbitrator. So, therefore, whether or not the arbitrator deemed that there was a reverse passing off claim under the Lanham Act is of no import to either the district court nor this court. Did the arbitrator's decision rest upon state law claims? The arbitrator's decision was both a decision on state law claims as well as the Lanham Act. The arbitrator did make a finding that the totaling had proved a Lanham Act claim, which we, of course, claim that was an error. Okay. Why don't you take a minute and wrap up this part of your argument? You've reserved some time. Just briefly, again, one of the critical parts with respect to a reverse passing off claim, I refer the court to the, actually, total ends authority, is a classic reverse passing off claim, and that's in the case of Mercado Latino versus Indio Products. In that particular case, what happened was that Indio Products had taken candles that were manufactured by Mercado, put them in their own box, saying Indio, and it sold them as their own. So, that is, actually, a classic reverse passing off claim, which Daystar did not eliminate. There are still those claims out there. What Daystar doesn't eliminate, or what Daystar set down very clearly, was that it does not protect the author of ideas, concepts, or communications. Thank you, Mr. Brewster. We will hear from Attorney Bryant now, if you will mute your audio and video. May it please the court, good afternoon again. My name is Tim Bryant, and I represent the District Court. As a client, we respectfully request that this court affirm the judgment of the District Court, because the District Court had subject matter jurisdiction over Tottelin's claims. Tottelin did not waive its right to arbitration by first seeking preliminary injunctive relief in the District Court, and lastly, the District Court did not abuse its discretion in awarding attorney fees and costs to Tottelin, pursuant to Section 21.3 of the Act. I'd like to begin this morning talking about the topic of subject matter jurisdiction, which was where my brother and Attorney Brewster just left off. The District Court had subject matter jurisdiction in this case, because Tottelin stated an unfair competition claim under the Lanham Act in Count 2, by alleging that the appellate deceived its customers when it held itself out to the public as unaffiliated with Tottelin, when, in fact, it continued to use Tottelin's daycare services. The Supreme Court decision that the appellates rely on and just talked about did not hold that a reverse passing off claim is unavailable under the Lanham Act, as argued in its brief, but rather declared that every circuit to consider the issue found Section 43A broad enough to encompass reverse passing off. The Supreme Court in the Dastar case did reject one specific type of reverse passing off argument involving the film involving former President General Eisenhower, but its decision on the interaction in that case between the Lanham Act and the federal copyright law is what was at issue and what Judge Scalia talked about. That's not a case at all like the one that's involved here, which involves services, not a court talked about protection of the producer of tangible goods. What is the tangible good that you are alleging belongs to your client? Sure, Your Honor, that's exactly the point. This case involves services, not goods. What was involved in the Dastar case was a videotape that was a copyright that lapsed. It was in the public marketplace. The defendant in that case went out and bought the videotape, took it. So what are the services? Sure, the services is the confidential system and operating system of tautolent. That ranges from big picture items, Your Honor, like the design of the building, the design of the classrooms, the educational system, the murals, the ages chosen for each classroom, the informational services, suppose the forms that were given to how to run the center, what curriculum was chosen for doing it. There were actually two separate. So you're saying that none of that is something that would be protectable by either copyright or trade law? I suppose, Your Honor, in hypothetical, it's possible that some of it might be. However, none of it was put into the public realm. So that's the difference between a copyright or a patent where you put the information into the public realm as opposed to say, Your Honor, the recipe for Coca-Cola is a secret, right? No one knows what it is. That's the point. So it doesn't expire here. No one in the public domain, unlike the Dastar case, knew what the system was, except for, as Attorney Brewster just pointed out, a franchisee of my client. That's how they found out about all this. They got trained on it. They changed the name and tried to pass it off as their own. But you're calling it a system. Why isn't it an idea that's protected by copyright? Because if it's going to be copyrightable, Your Honor, I suppose the only thing that could be copyrightable are the portions of it that were put in writing. You could, I suppose, in theory, I'm not an expert in copyright law, but in theory, I suppose you can copyright portions of that. But they're constantly updating and changing that as part of the confidential system they're communicating with the franchisee about. So even if you could do that, and even if it was copyrightable, it's still a service, not a product. A franchise is a contract. Are you saying that there were things that were communicated belonging to your client outside of the contract? I'm saying, Your Honor, one of the things under the contract that's part of that system, I'm sorry, part of the relationship is not only providing initial guidance on what to do in training, but ongoing training that's part of that. That's not outside the contract. That's called for within the terms of the contract, this continuing relationship of what's going on. To use a really crude example, Your Honor, we're all familiar with subway commercials. And over the years, their products have changed, right? But pursuant to that contract, they're constantly engaging in that give and take to get better products for the consumer. That's a product example, Your Honor, not a services one. Well, give me an example in this case of when something like that happened between these two parties. Sure. As the educational curriculum over the 10 plus year or 12 plus year period worked together, Your Honor, that was education that went back and forth. They had to involve themselves with the state educational system and the State Department of Health and Human Services regarding standards for classroom numbers and for procedures related to the number of teachers and students, what needed to be taught. All those things were constantly evolving over that 12 year period of time, which my client kept up on, had meetings with them to recommend what they should do and should not do to optimize their services to help the children that were in their care. I guess that would be the first example that comes to mind, Your Honor. Does that address what you're thinking about, Your Honor? Well, I'm trying to figure out what you're services of how to run the center and the concept of how to do that. They call it a system. We're using that word here, Your Honor, only because that's the word in the franchise agreement. That's not something that Attorney Bruce Brown are making up. It's literally a defined term, and it talks about all of these different types of things. As I said earlier, during the arbitration hearing, there were several witnesses and several PowerPoint presentations on this very topic to explain to the arbitrator exactly what was encompassed in the system. To your question earlier, the arbitrator specifically found a violation of the unfair competition claim under the Lanham Act in its decision. We obviously were able to persuade him, which brings us back to what Your Honor asked about earlier. It's not, is there a claim that we can win on, which we did. The question is whether that claim was wholly insubstantial, immaterial, or frivolous, given a specific case on point by the U.S. Supreme Court, which there is not here. And the fact that the arbitrator ruled in my client's favor, I think, is the best evidence of that here, Your Honor, because he, the arbitrator was a male, he found this decision in favor of my client. So if my client's claim was wholly insubstantial or immaterial or frivolous, then he wouldn't have found in its favor when that was argued before him that there was no such claim or no such violence. What if the claim has the patina of cogency, but in fact is legally deficient? I'm sorry. What if the claim has the patina of cogency, but upon closer review, is actually deficient? Can that still be a basis for subject matter jurisdiction? I guess I'm looking at the different words that the First Circuit has used, but it's, in theory, a claim cannot be viable, but the court still has subject matter jurisdiction, if that's what Your Honor is asking. It's a lower or lesser standard, and I think the that's a much higher standard, and this much lower standard that's being applied here, wholly insubstantial, immaterial, or frivolous, I think is what Your Honor is talking about. Thank you. You've cited a couple of circuits that have analyzed Daystar. Is there a case, that is your home run case, factually, where the kinds of services involved in the case are analogous to this case? Sure. I know, Your Honor, is the specific answer. However, I would assert that that's the problem of the appellants in this case, because the burden is on them to show the home run case that shows my client's claims are wholly insubstantial, immaterial, or frivolous, and there is no such case that's been cited. The closest they can come is the Daystar case involving goods related to a movie that was in the public marketplace. So, that's the closest they can come to any case that's even close to this, never mind, as Your Honor just put it, a home run case, and the burden is on them to do that in this particular case, because they're challenging the judgment of the lower court. I realize Your Honors are looking at it de novo, but the answer is the best they can come up with is the Daystar decision, which is distinguishable on facts in the law, I would respectfully suggest. Additional questions from the panel? All right. Thank you, Mr. Bryant. Thank you, Your Honor. Mr. Brewster, you've reserved a little time. Thank you, Your Honor. Just with respect to the differences between what Daystar held with respect to, as they said, as the court said, this is page 34 of the Daystar opinion, we have been careful to caution against the misuse or overextension of trademark and related protections into the areas traditionally occupied by patent or copyright. Now, to be sure, is that under the patent laws, there are such things as a process patent. So, therefore, if, in fact, that the total in system that they claim is protected by the trade secret law, or that body of intellectual property law, they could have, if in fact, satisfied the requirements of patent law of essentially tried to get patent law protection. And if, in fact, we had used that, then they could have brought in, if they had a valid patent, they could have gotten a patent claim against us. In case it's as said by them here, is that what they did claim was protected was under trade secret law. And they brought that claim in this case, under main trade secret law, misappropriation of trade secrets. Now, I will actually say it was actually spelled out in protected. His response was a concept of how to run a daycare system. And that's exactly what the holding of Daystar versus 20th Century Fox Film said was not protected by the Lanham Act was a concept. And that's what they raised in this particular case. Is that the Lanham Act was not to spill over into it was actually a producer of either a good or a service and the misrepresentation of either that good or service. And that's not here. But they are claiming protection of the Lanham Act here is their system, their idea, their concept of how to run a daycare center. So you're not distinguishing them between good and service. You accept that services might be a producer of services, origin of the services may be protected under the Lanham Act. Okay. Yeah. So if you accept that and they say that that's what they provided you with services. It's the misrepresentation of to the consumer of the misrepresentation, like a product, the producer of a product. Now, in this particular case, they weren't a producer of services. They were a producer of an idea in which we were the producer of services. So this is where the Daystar holding is, is that is that is that they it's not a service here they're giving. They are essentially an idea or a concept that they are claiming here. So to the extent that they are, in essence, providing you with a service, you're saying that all of that should have been protected by some other intellectual property act. Correct. Is that that either is under the Lanham Act and under the Daystar opinion, they say that should be protected by copyright law, that should be protected by by patent law, or as they are, they're seeking protection here is under trade secret law. But what it doesn't give is open the doors of the federal courts to claim that all of that is is a Lanham Act violation and open up the courts, the courts to violations of Lanham Act with respect to this. Isn't the claim, though, also that that it's not simply the the idea or the concept, but there are actually processes that were that were used. And so it's more than an idea that that basically KP, you know, KPJ was utilizing the actual processes, you know, some of them in sort of written format that Tata Lin had had had created. It's it's the producer again, what Daystar, why Daystar is so important is it separates competition law from intellectual property law, you know, and and how that impacts a market participant's goodwill in the market. You know, as we as we know, is that if if a producer is to essentially put into the marketplace their own good, but put someone else's trademark on it, that's a classic passing off claim. That's a classic of what section 43 of the Lanham Act was supposed to get at. So now we take the reverse of it, which we've talked about before in this proceeding, is that if you if you take someone else's product manufactured, produced by someone else's product or someone else's services and hold it out as your own, then that too has application, though it's limited or less because it doesn't necessarily those impacts if don't necessarily impact on a broad scale, the passing off claim or someone else's good goodwill in the marketplace. So that that's the in the concern for the federal courts will be this is that, you know, the American economy is based upon employees, former employees, leaving their employers, starting businesses based on ideas they may have learned in participating in a marketplace. If whenever that happens, that former employee starting their own business is to a reverse passing off claim because their former employer claims that, well, you must have picked that up having worked for me and you're subject to to a Lanham Act violation. I don't believe the federal courts want to be in a position of opening their doors to all those type of claims because virtually any case like this case we claim would be subject to former employers going after their employees for under this reverse passing off theory. Thank you, Mr. Brewster. Thank you, Your Honor. Thank you all. Thank you. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.